Gregory W. Gilliam
VENABLE LLP
Rockefeller Center
1270 Avenue of the Americas
25th Floor
New York, New York  10020
Tel: (212) 307-5500
Attorneys for Defendants Pusser's Inc., Pusser's Ltd.,
Pusser's West Indies Ltd., and Charles S. Tobias

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------------x

| | |
|---|---|
| | :   Case No. 08cv2144 (LTS)(GWG) |
| MAGWITCH L.L.C., | : |
| | : |
| Plaintiff, | :   ECF Case |
| | : |
| -against- | : |
| | : |
| PUSSER'S INC., PUSSER'S LTD., PUSSER'S WEST | : |
| INDIES LTD and CHARLES S. TOBIAS. | : |
| | : |
| Defendants. | : |

-----------------------------------------------------------------------x

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'**
**MOTION TO DISMISS THE COMPLAINT**

Dated:  New York, New York
        March 10, 2008

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................. ii

INTRODUCTION ...........................................................................................1

STATEMENT OF RELEVANT FACTS ..............................................................4

    Background Concerning the Parties.............................................................4

    Mr. De Vos's Involvement with the Pusser's Entities .................................5

    Pusser's Ltd's 2002 Promissory Note to Barclay's ....................................6

    Plaintiff Magwitch's Involvement and the Underlying Dispute....................8

    Communications Between Defendants and Plaintiff and Mr. De Vos ..........9

ARGUMENT ...............................................................................................10

    I.     The Personal Jurisdiction and Due Process Analysis
           Under New York Law........................................................................10

    II.    The Factual Support Necessary for Plaintiff to Establish
           General Jurisdiction Over Defendants is Lacking .................................11

    III.   The Factual Support Necessary for Plaintiff to Establish
           Specific Jurisdiction Over Defendants is Lacking.................................13

           A.    Jurisdiction does not exist pursuant to N.Y. C.P.L.R. § 302(a)(1) ...........13

                 1.    Defendants did not "transact business" in New York...................14

                 2.    Even if Defendants "transacted business" in New York,
                      Plaintiff's claims do not arise from the transacting
                      of such business ...........................................................17

           B.    Jurisdiction does not exist on Plaintiff's tort claims
               pursuant to N.Y. C.P.L.R. § 302(a)(3)....................................21

    IV.   Subjecting Defendants to Jurisdiction in New York Would be
           Unreasonable and Offend Traditional Notions of Fair Play .................23

CONCLUSION.............................................................................................25

# TABLE OF AUTHORITIES

Page

## Cases

*Ball v. Metallurgie Hoboken-Overpelt, S.A.,*
    902 F.2d 194 (2d Cir. 1990)......................................................................11

*Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez,*
    171 F.3d 779 (2d Cir. 1999).....................................................................22

*Baptichon v. Nevada State Bank,*
    304 F.Supp.2d 451 (E.D.N.Y. 2004) ..................................................22, 23

*Best Van Lines, Inc. v. Walker,*
    490 F.3d 239 (2d Cir. 2007)..............................................10, 11, 13, 14, 17

*Burrows Paper Corp. v. R.G. Engineering, Inc.,*
    363 F. Supp. 2d 379 (N.D.N.Y. 2005).................................................11, 12

*Deutsche Bank Securities, Inc. v. Montana Bd. of Investors,*
    7 N.Y.3d 65, 850 N.E.2d 1140 (N.Y. 2006) ......................................15, 17

*First City Fed. Sav. Bank v. Dennis,*
    680 F. Supp. 579 (S.D.N.Y. 1988)............................................................17

*In re Ski Train Fire,*
    230 F. Supp. 2d 376 (S.D.N.Y. 2002).......................................................11

*Int'l Healthcare Exchange, Inc. v. Global Healthcare Exchange, LLC,*
    470 F. Supp. 2d 345 (S.D.N.Y. 2007).................................................10, 24

*Kimco Exchange Place Corp. v. Thomas Benz, Inc.,*
    34 A.D.3d 433 (2nd Dept. 2006)...............................................................15

*Kronisch v. United States,*
    150 F.2d 112 (2d Cir. 1998)......................................................................10

*Landoil Res. Corp. v. Alexander & Alexander Servs., Inc.,*
    918 F.2d 1039 (2d Cir. 1990)....................................................................12

*Levisohn, Lerner, Berger & Langsam v. Med. Taping Sys., Inc.,*
    10 F. Supp. 2d 334 (S.D.N.Y. 1998).........................................................20

*McKee Elec. Co. v. Rauland-Borg Corp.,*
    229 N.E.2d 604, 283 N.Y.S.2d 34 (1967).................................................14

*Mije Assocs. v. Halliburton Servs.,*
    552 F. Supp. 418 (S.D.N.Y. 1982)...................................................................23

*Pennie & Edmonds v. Austad Co.,*
    681 F. Supp. 1074 (S.D.N.Y. 1988).........................................................16, 20

*Perlman v. Martin,*
    332 N.Y.S.2d 360 (Nassau Sup. Ct. 1972) .................................................16

*Plaza Realty Investors v. Bailey,*
    484 F. Supp. 335 (S.D.N.Y. 1979)...............................................................17

*Savin v. Ranier,*
    898 F.2d 304 (2d Cir. 1990)..........................................................................11

*Sole Resort, S.A. v. Allure Resorts Management, LLC,*
    450 F.3d 100 (2d Cir. 2006)..........................................................................17

*Sterling Nat'l Bank & Trust Co. v. Fidelity Mortgage Invs.,*
    510 F.2d 870 (2d Cir. 1975)..........................................................................14

*Whitaker v. Am. Telecasting, Inc.,*
    261 F.3d 196 (2d Cir. 2001)..........................................................................23

*World Wide Volkswagen v. Woodson,*
    444 U.S. 286 (1980).......................................................................................11

*Worldwide Futgol Assocs., Inc. v. Event Entertainment, Inc.,*
    983 F. Supp. 173 (E.D.N.Y. 1997). ..............................................................19

## Statutes

Federal Rule of Civil Procedure 12(b)(2) ......................................................1, 10

N.Y. CPLR § 301.............................................................................................10, 23

N.Y. CPLR § 302.............................................................................................10, 23

N.Y. CPLR § 302(a)(1)....................................................13, 14, 15, 16, 17, 20

N.Y. CPLR § 302(a)(3).................................................................................21, 23

The Defendants Pusser's, Inc., a Florida Corporation ("Pusser's Florida"); Pusser's, Ltd, a British Virgin Islands company ("Pusser's Ltd"); Pusser's West Indies, Ltd, a British Virgin Islands company ("PWI"); and Charles Tobias, a citizen of the British Virgin Islands, (collectively "Defendants" or "Pusser's entities"), through their undersigned counsel and pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure respectfully submit this Memorandum in Support of Their Motion to Dismiss the Complaint.

## INTRODUCTION

In May 2002, as part of a workout of Pusser's Ltd's debt to a British bank, Barclays, plaintiff Magwitch, LLC ("Magwitch" or "Plaintiff"), paid Barclays Bank's branch in the British Virgin Islands the steeply discounted price of $1.5 million to purchase a $3.3 million Promissory Note ("Note") made by Pusser's Ltd, which was secured by assets of Pusser's Ltd subsidiaries in Florida, Maryland, and South Carolina.  In April 2005, Magwitch recovered its entire $1.5 million investment as part of a liquidation of those assets.  Magwitch now seeks to recover more than $2 million in principal and interest allegedly still due under the Note.  In addition to suing Pusser's Ltd, the maker of the Note, and Pusser's Florida, whose assets secured the Note, Magwitch is also suing Mr. Tobias and PWI, who are not parties to the Note and have no contractual obligation to Magwitch.  Magwitch's theory with respect to Mr. Tobias and PWI is that they caused funds to be transferred between Pusser's operations in the United States and the BVI in violation of Magwitch's security interests and contrary to promises allegedly made to Magwitch when it bought the Note.

Plaintiff's claims cannot go forward in this Court because none of the Defendants has sufficient contacts with New York to subject them to the personal jurisdiction of this Court. None of the Pusser's entities has any offices, employees, assets or other contacts with New York.

The Note and security agreements that are the subject of the dispute were not negotiated or executed in New York, none of them contains forum-selection clauses that implicate New York, none of them involves performance by the parties in New York (except that payments on the Note were sent to a New York bank at the request of Magwitch), and all of them are expressly governed by the laws of the BVI or some jurisdiction other than New York.

This action is a virtual replica of one filed by Magwitch against the Defendants in the United States District Court for the District of New Jersey in July 2007 and subsequently dismissed for lack of personal jurisdiction.[1]  Magwitch sought to establish personal jurisdiction in New Jersey with a sworn declaration from Lloyd De Vos, a lawyer who, it needs to be said, is both Magwitch's owner and, at the time of the events recited in the complaint, was the lawyer for the Pusser's entities.  In his declaration, Mr. De Vos claimed, among other things:

- That during the period of time that Pusser's was responding to threats from Barclays Bank to liquidate Pusser's, Mr. De Vos and Mr. Tobias spoke on the phone several times a week and *"[t]hese conferences took place with me being either at my law office in New Jersey or at home in New Jersey."* Gilliam Decl. Ex. B ¶ 61(a), the September 30, 2007 Declaration of Lloyd De Vos ("De Vos's N.J. Decl.") (emphasis added).

- That "when we began to discuss the purchase of Barclays debt by Magwitch," these discussions *"took place with me being in New Jersey."* *Id.* ¶ 61(c) (emphasis added).

- That he, on behalf of Magwitch, *"signed the Barclays Agreement* [pursuant to which Magwitch purchased the Note] *in New Jersey."* *Id.* ¶ 61(d) (emphasis added).

- That he, on behalf of Magwitch, "gave directions for the transfer of funds for the purchase of the Promissory Note to my bankers *from New Jersey*." *Id.* at ¶ 61(e) (emphasis added).

- That he, on behalf of Magwitch, signed an "agreement amending the Barclays Agreement *in New Jersey*." *Id.* ¶ 60(f) (emphasis added).

---

[1] *See Magwitch LLC v. Pusser's, Inc., et al.*, D.N.J. Case No. 07-3040, and Ex. A to the Declaration of Greg Gilliam ("Gilliam Decl."), which is a copy of the Court's December 20, 2007 Order dismissing the New Jersey action.

- That the "Promissory Note and all of the original security agreements *have been kept in my safe at home in New Jersey* since I received them." *Id.* ¶ 61(g) (emphasis added).

- That the "Promissory Note sued upon here is expressly drafted to be *payable in New Jersey*"; that the "intention of all the parties to the transaction" was that the Note "would be *payable in New Jersey to Magwitch*"; and that "Magwitch indeed did make demand for payment of the Promissory Note *in New Jersey.*" *Id.* ¶ 61(h) (emphasis added).

- That he "handled matters relating to the Magwitch investment in the Pusser's debt *from my home in New Jersey* as a private matter separate and apart from matters relating to professional representation of clients." *Id.* ¶ 61(k) (emphasis added).

In addition, on page 27 of its Memorandum of Law in Opposition to Defendants' Motion to Dismiss the Complaint in New Jersey, Magwitch claimed that as a result of the alleged tortious conduct of the Defendants, "Magwitch felt not only the brunt of the harm, but all of the harm, in New Jersey." Gilliam Decl. Ex. C at 27, Magwitch's New Jersey Opposition.

Thus, when it suited Magwitch to litigate in New Jersey, Magwitch claimed that virtually all of the events out of which its claims arose took place in or were directed at New Jersey and that all the alleged harm to Magwitch was felt in New Jersey.

Mr. De Vos also swore in the New Jersey action that he was not in the BVI at critical periods of negotiations leading to Magwitch's purchase of the Note and that he "signed none of the documents on behalf of Magwitch in the British Virgin Islands." Gilliam Decl. Ex. B ¶¶ 74-75, De Vos's N.J. Decl. These latter statements were shown to be false, if not perjurious, so Mr. De Vos sought to correct them in a supplemental declaration.[2]

Now, rather than bring its claims in the proper venue, the BVI, where jurisdiction is certain and the merits can properly and expeditiously be resolved, Magwitch has re-filed its

---

[2] *See* Gilliam Decl. Ex. D ¶¶ 13-20, the Nov. 12, 2007 Second Declaration of Lloyd De Vos ("De Vos's Suppl. N.J. Decl.").

action in New York.  The events and circumstances giving rise to this action have even less relationship to New York than they do to New Jersey.  Plaintiff therefore cannot possibly meet its burden to establish a proper basis for this Court's exercise of personal jurisdiction over the four defendants.

## **STATEMENT OF RELEVANT FACTS**

Background Concerning the Parties

      Magwitch is a limited liability company formed in New York.  *See* Compl. ¶ 1.  It is solely owned by Lloyd De Vos, who is its only member and manager.  *See* Gilliam Decl. Ex B ¶ 1, De Vos's N.J. Decl.  Mr. De Vos is licensed to practice law in New York and New Jersey and lives in New Jersey.  *Id.* ¶¶ 2-3.  According to Mr. De Vos, matters relating to Magwitch have been handled from his home in New Jersey as a private matter separate and apart from matters relating to professional representation of clients.  *Id.* ¶ 61(k).

      Pusser's Florida is a corporation organized under the laws of the state of Florida.  *See* Declaration of Charles S. Tobias ("Tobias Decl.") ¶ 9, which is incorporated herein by reference. However, it has had no business activity, employees or income since 2005.  *See* Tobias Decl. ¶ 9. Prior to 2005 when Pusser's Florida was actively engaged in business pursuits, its activities, properties, and employees were in Florida, Maryland and South Carolina, not New York.  *Id.*

      Pusser's Ltd is a corporation organized under the laws of the BVI and is the sole shareholder of Pusser's Florida.  *Id.* ¶ 10.  Pusser's Ltd is inactive, but when it had business operations in the U.S. they were through subsidiaries that were ultimately merged into Pusser's Florida in 2003.  *Id.*

      PWI is a corporation organized under the laws of the BVI and is wholly owned by Mr. Tobias.  *Id.* ¶ 11.  PWI has never conducted business in New York and has never had any

4

Pusser's branded restaurants or retail outlets in the United States. *Id.* Rather, PWI owns and operates the Pusser's branded restaurants, retail outlets, and other operations in the Caribbean, as distinguished from the Pusser's branded operations in the United States. *Id.*

None of the Pusser's entities has ever been qualified or licensed to do business in New York or, until the above-captioned action was filed, been involved in any legal proceedings in New York. *Id.* ¶ 14. In addition, none of the Pusser's entities has ever owned, leased, or otherwise occupied any real property in New York. *Id.* ¶ 12. None of the Pusser's entities has ever maintained any tangible or intangible personal property in New York, none of them has employed persons in New York, and none of them has ever kept bank accounts or made investments in New York. *Id.* ¶ 13.

Mr. Tobias is an officer or director of the Pusser's entities and has been a resident and domiciliary of the BVI since 1979. *Id.* ¶ 2. He has been a BVI citizen since 1999 and has never been a citizen or domiciliary of New York. *Id.* ¶¶ 2-3. He has never have owned, leased or otherwise occupied any real property in New York, has never maintained any tangible or intangible personal property in New York, has never kept bank accounts or made investments in New York, and has never derived any income from New York. *Id.* ¶¶ 4-6.

<u>Mr. De Vos's Involvement with the Pusser's Entities</u>

In the early 1980's, a friend of Mr. Tobias who headed a bank in the BVI that was using Mr. De Vos as a lawyer introduced the two of them. Mr. Tobias understood Mr. De Vos to be a business and tax lawyer who provided legal advice to persons doing business in the Caribbean, including the BVI, and who maintained an office in the neighboring U.S. Virgin Islands. *See* Tobias Decl. ¶ 15. Mr. De Vos subsequently made an investment in Pusser's Ltd and soon

thereafter joined the company's board of directors.  *See* Gilliam Decl. Ex. B ¶ 8, De Vos's N.J.

Decl.  For a number of years Mr. De Vos remained an investor and board member.  *Id.*

In the early 1990's, Pusser's operations began to expand outside the Caribbean and into

the United States.  *Id.* ¶ 9.  By the mid-1990s, Mr. De Vos had invested another half million

dollars in Pusser's Ltd stock, and was also providing legal advice to Pusser's, though none of it

related to any matters in New York.  *See* Tobias Decl. ¶¶ 15, 18.  The fact that Mr. De Vos was

licensed to practice law in New York had no bearing on the legal representation of Pusser's.  *Id.*

¶ 18.  Rather, Mr. Tobias looked to him for business and tax advice unrelated to New York.  *Id.*

Mr. De Vos eventually became not only a shareholder, director, and officer, but also

Pusser's Ltd's closest legal advisor.  *Id.* ¶ 24.  He came to the BVI for all important corporate

meetings, including every annual meeting, and he participated in person in every important

meeting with Barclays about Pusser's Ltd's attempted debt restructuring.  *Id.*  Most of these

meetings were in the BVI, and all of them were held in the Caribbean, but none of them was in

New York.  *Id.*  For example, Mr. De Vos flew to Barbados in June 2001 for a meeting with

Barclays workout specialists, visited the BVI in August 2001 for the annual meeting of

shareholders of Pusser's, Inc. and attended Pusser's, Inc.'s annual meeting in the BVI in

November 2001.  *Id.* ¶¶ 25-27.

<u>Pusser's Ltd's 2002 Promissory Note to Barclay's</u>

Pusser's Ltd's business in the Caribbean, through its wholly-owned subsidiaries, included

Pusser's branded restaurants and retail operations, which eventually expanded operations into

Florida, Maryland, and South Carolina.  *See* Tobias Decl.  ¶ 21.  There were never any such

operations in New York.  *Id.*  Pusser's Ltd financed its operations, including its U.S. operations,

through loans provided through the British bank Barclays on Tortola in the BVI.  *Id.* ¶ 22.  To

secure itself, Barclays took a security interest in certain of Pusser's Ltd's assets in the Caribbean and the United States. *Id.* By early 2001, Pusser's Ltd had accumulated indebtedness to Barclays in excess of $11 million and could no longer service the debt. *Id.* ¶ 23. Instead of placing Pusser's Ltd in default, Barclays sought to negotiate a restructuring of the debt. *Id.*

Mr. De Vos participated in person in important meetings with Barclays about the restructuring, all of which took place in the BVI. *Id.* ¶ 24. Indeed, Mr. De Vos first proposed that Magwitch purchase a portion of the Barclays debt during face-to-face negotiations in the BVI in 2002. *See* Gilliam Decl. Ex. E at 80-81, De Vos's February 22, 2005 Deposition Transcript. By Mr. De Vos's own admission, any of the prior discussions about the Barclays restructuring and workout that took place in 2001 would have been from his home or his law office in New Jersey, not New York. *See* Gilliam Decl. Ex. B ¶ 61(a), De Vos's N.J. Decl.[3]

Barclays eventually agreed to allocate the cumulative debt owed to it between debt secured by certain assets of Pusser's Ltd in the Caribbean, and $3.3 million in debt secured by certain assets of Pusser's Ltd's subsidiaries in the United States. *See* Tobias Decl. ¶ 31. Pursuant to this arrangement, Pusser's Ltd made the Note in the amount of $3.3 million to Barclays on May 9, 2002. *Id.* ¶ 33. A copy of the Note is attached as Exhibit G to the Tobias Declaration. Mr. Tobias signed the Note in the BVI on behalf of the borrower, Pusser's Ltd, and on behalf of the U.S. subsidiaries of Pusser's Ltd, including Pusser's Florida and other Pusser's Ltd subsidiaries whose assets secured the Note. *Id.* Pusser's Ltd was to pay Barclays the amount of the Note plus interest "**on demand**, at its offices at Road Town, Tortola, British Virgin Islands," or at such other place designated by Barclays. *Id.* The Note contains a choice-

---

[3] Mr. De Vos worked in New Jersey for Edwards & Angell LLP between early 2000 and August 2001. *See* Gilliam Decl. Ex. B ¶ 61(a), De Vos's N.J. Decl. In September 2001, Mr. De Vos joined Hill, Betts & Nash, then located in the World Trade Center, but because of the events of September 11, 2001 he worked from home in New Jersey through the end of 2001. *Id.* ¶ 61(b).

of-law clause providing that it "shall be governed as to validity, interpretation, construction, effect, and in all other respects by the laws and decisions of the British Virgin Islands." *Id.* ¶ 34.

Plaintiff Magwitch's Involvement and the Underlying Dispute

Magwitch purchased the Note from Barclays for $1.5 million. *See* Tobias Decl. ¶ 35. The Assignment Agreement pursuant to which Barclays assigned the Note to Magwitch was executed in the BVI and is expressly governed by the laws of the BVI. *Id.* ¶ 36.[4] A copy of the Assignment Agreement is attached as Exhibit F to the Tobias Declaration. The ensuing relationship between Pusser's Florida and Pusser's Ltd, on the one hand, and Magwitch, on the other hand, arose out of the Note and assignment to Magwitch that transpired in the BVI in 2002.

In conjunction with the Note, Pusser's Florida and the then existing Pusser's entities in Maryland, South Carolina, and Delaware were subject to security agreements (the "Security Agreements") with Magwitch pursuant to which they pledged certain of their assets to secure Pusser's Ltd's indebtedness to Magwitch under the Promissory Note. *Id.* ¶ 36. Copies of these Security Agreements and assignments thereof to Magwitch are attached as Exhibits H and I, respectively, to the Tobias Declaration. The Security Agreements and assignments of the Security Agreements to Magwitch were executed in the BVI and are governed by the laws of Florida, Maryland, South Carolina, and Delaware, respectively. *See* Tobias Decl. Exs. H and I. None of these Security Agreements was entered into in New York, pertained to assets in New York, or was in any way governed by New York law. *See* Tobias Decl. ¶ 36.

By agreement of all concerned persons, the accounts of all the Pusser's operations in the Caribbean and the United States were managed in the BVI by a single financial comptroller, Kert Tennikait. *Id.* ¶ 37. There were no improper transfers of funds between Pusser's companies as

---

[4] Mr. De Vos claims that Barclays' counsel sent the agreement to him in New Jersey and that he signed it there and send it back to the BVI. *See* Gilliam Decl. Ex. B ¶ 61(d)., De Vos's N.J. Decl.

alleged in the Complaint. Representatives of the Pusser's entities and Magwitch, with Mr. De Vos in attendance as Pusser's lawyer, officer, director and creditor, met often in the BVI and discussed, among other things, transfers of funds between Pusser's companies. *Id.* ¶ 38. Any alleged representations with respect to transfers of funds between Pusser's companies were made in the BVI. *Id.* Any inter-company fund transfers that occurred, whether from Caribbean operations to United States operations or vice versa, were effected in the BVI. *Id.* ¶ 37.

<u>Communications Between Defendants and Plaintiff and Mr. De Vos</u>

From 2000 to 2004 Mr. Tobias was in New York less than five times, and if he visited Mr. De Vos he would typically see him at his New York law office, or at a restaurant for dinner. *See* Tobias Decl. ¶ 16. When Mr. Tobias contacted Mr. De Vos by letter, fax and email, he directed correspondence to his law firm in New Jersey or New York. *Id.* When Mr. Tobias called Mr. De Vos, he called Mr. De Vos's law office, which was for a period of time from 2000 until September 2001, in New Jersey, and for another period of time, after September 2001, in New York. *Id.* If he could not reach Mr. De Vos in his office, Mr. Tobias typically called him on his cell phone. *Id.* Mr. Tobias did not keep track of where Mr. De Vos was when he spoke to him on the phone, and called him wherever he happened to be. *Id.* ¶ 17.

Mr. Tobias has no recollection of discussing the Barclays workout or the Magwitch debt purchase with Mr. De Vos on the phone while he was in New York, but if he did it was only because Mr. De Vos happened to be in New York at that time. *Id.* Nor does Mr. Tobias have any recollection of discussing the Barclays workout or Magwitch's purchase of a piece of the Barclays debt while he was physically present in New York. *Id.* To the contrary, his recollection was that all significant discussions about the Barclays workout, and Magwitch's part in it, took place in the BVI or, on at least one occasion, in Barbados. *Id.*

When the Promissory Note was sold to Magwitch, Pusser's Ltd was instructed to direct all communications to Magwitch's address in New York. *Id.* ¶ 35. Although the Security Agreements Magwitch obtained also provide a New York contact address for Magwitch, Mr. De Vos acknowledges that he handled matters pertaining to Magwitch's investment from his home in New Jersey as "a private matter separate and apart from matters relating to professional representation of clients." *See* Gilliam Decl. Ex. B ¶ 61(k), De Vos's N.J. Decl. Magwitch formally demanded payment under the Promissory Note in September 2006 via a letter to Pusser's Ltd in the BVI that showed a New Jersey address for Magwitch. *See* Tobias Decl. ¶ 35.

Under this factual background, neither Mr. Tobias nor the Pusser's entities reasonably expected to be brought into court in New York regarding these disputes. *Id.* ¶ 45.

## ARGUMENT

### I. The Personal Jurisdiction and Due Process Analysis Under New York Law.

When responding to a Rule 12(b)(2) motion to dismiss, the plaintiff bears the burden of establishing personal jurisdiction over the defendants. *See Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 242 (2d Cir. 2007); *Int'l Healthcare Exchange, Inc. v. Global Healthcare Exchange, LLC*, 470 F. Supp. 2d 345, 358 (S.D.N.Y. 2007).

The analysis of whether personal jurisdiction exists over Defendants in this case is a two-step process. First, the Court must look to the long-arm statute of the State of New York, in which this District Court sits. *See Best Van Lines, Inc.*, 490 F.3d at 242 (citing *Kronisch v. United States,* 150 F.3d 112, 130 (2d Cir. 1998)). New York's long-arm statute provides for two general classes of personal jurisdiction -- (1) general jurisdiction under N.Y. CPLR § 301; and (2) specific jurisdiction under N.Y. CPLR § 302.

Only if the Court first determines that New York has jurisdiction over any of the Defendants under the long-arm statute does the Court proceed to the second step of the analysis—whether asserting jurisdiction under New York's long-arm statute would be compatible with requirements of due process established under the Fourteenth Amendment. *See Best Van Lines*, 490 F.3d at 242. Even if jurisdiction were appropriate under the long-arm statute, the second step of the analysis—"whether exercise of jurisdiction comports with due process" – also must be satisfied. *See Savin v. Ranier*, 898 F.2d 304, 306 (2d Cir. 1990). To satisfy due process, a plaintiff must show that its claim arises out of or relates to defendant's contacts with New York, and that the defendant could foresee being haled into court in New York. *See World Wide Volkswagen v. Woodson*, 444 U.S. 286, 297 (1980).

## II.    The Factual Support Necessary For Plaintiff To Establish General Jurisdiction Over Defendants Is Lacking.

The general jurisdiction statute in New York states that "[a] court may exercise such jurisdiction over persons ... as might have been exercised heretofore." N.Y. CPLR § 301. This section has been construed to authorize the exercise of jurisdiction over a foreign person or corporation if the defendant "'does business' in New York in the '*traditional sense.*'" *Burrows Paper Corp. v. R.G. Engineering, Inc.*, 363 F. Supp. 2d 379, 383 (N.D.N.Y. 2005) (quoting *Ball v. Metallurgie Hoboken-Overpelt, S.A.*, 902 F.2d 194, 198 (2d Cir.1990)). This standard has been interpreted to allow jurisdiction "only when the defendant is 'engaged in such a continuous and systematic course of doing business [in New York] as to warrant a finding of its presence' in the jurisdiction." *Id.* Occasional or casual business in New York does not suffice. *Id.*

The standard for general jurisdiction is stringent because a corporation subject to the Court's general jurisdiction may be sued in New York "on causes of action wholly unrelated to acts done in New York." *In re Ski Train Fire,* 230 F. Supp. 2d 376, 382 (S.D.N.Y. 2002). New

York courts have generally focused on the following factors to determine whether a party is "doing business" for the purpose of general jurisdiction: "the existence of an office in New York; the solicitation of business in New York; the presence of bank accounts or other property in New York; and the presence of employees or agents in New York." *Burrows Paper Corp.*, 363 F. Supp. 2d at 384 (quoting *Landoil Res. Corp. v. Alexander & Alexander Servs., Inc.,* 918 F.2d 1039, 1043 (2d Cir. 1990)).

The Complaint does not contain a single fact to show that Mr. Tobias or the Pusser's entities had "permanent and continuous" contact with New York in the traditional business sense sufficient to satisfy the stringent standard for general jurisdiction.[5] Indeed, no facts support general jurisdiction over any of the Defendants:

- Mr. Tobias has been a resident and domiciliary of the BVI since 1979 and has never been a citizen or domiciliary of New York. *See* Tobias Decl. ¶¶ 2-3.

- Mr. Tobias never owned, leased or otherwise occupied any real property in New York or maintained any tangible or intangible personal property in New York. *Id.* ¶¶ 4-5.

- Mr. Tobias never kept bank accounts or made investments in New York, or derived any income from New York. *Id.* ¶¶ 5-6.

- Mr. Tobias never carried on a business, or otherwise engaged in business activities directed at New York in or on his own behalf, and he derives no income from New York. *Id.* ¶¶ 6-7.

- Pusser's Florida has had no business activity, and no employees, and no income since 2005. Prior to 2005 it operated in Florida, Maryland and South Carolina, not New York. *Id.* ¶ 9.

- Pusser's Ltd is a BVI corporation and when it had U.S. operations through its subsidiaries, none was in New York. *Id.* ¶ 10.

---

[5] It is unclear whether Plaintiff is alleging that Defendants are subject to the general jurisdiction of the New York courts. Plaintiff alleges that Mr. Tobias "regularly" came to New York to conduct business on behalf of the Pusser's entities, *see* Compl. ¶ 11, that he maintained "regular and continuous" telephone, facsimile and electronic communications with Magwitch representatives in New York, *Id.* ¶ 14, and that he "regularly" employed counsel in New York personally and on behalf of the Pusser's entities. *Id.* ¶ 15. However, all of these allegations are tied to "the times relevant to the transaction described in this Complaint," which implies that they are specific jurisdiction allegations tied to the causes of action in the Complaint.

- PWI is a BVI corporation that owns and operates the Pusser's branded restaurants, retail outlets, and other operations in the Caribbean. PWI has never conducted business in New York and has never had any Pusser's branded operations in the United States. *Id.* ¶ 11.

- None of the Pusser's entities has ever been qualified or licensed to do business in New York or, until the above-captioned action was filed, been involved in any legal proceedings in New York. *Id.* ¶ 14.

- None of the Pusser's entities has ever owned, leased, or otherwise occupied any real property in New York, maintained any tangible or intangible personal property in New York, or kept bank accounts or made investments in New York. *Id.* ¶¶ 12-13.

Considering that none of the Defendants maintains operations, bank accounts, or any real, tangible, or intangible property in New York, and none has continuous and systematic contacts with New York, the Defendants cannot be said to be "doing business" in New York with any measure of permanence or continuity." Thus, general jurisdiction, to the extent Plaintiff is alleging it as a basis for jurisdiction, is lacking.

**III.    The Factual Support Necessary For Plaintiff To Establish Specific Jurisdiction Over Defendants Is Lacking.**

**A.    Jurisdiction does not exist pursuant to N.Y. CPLR § 302(a)(1).**

N.Y. CPLR § 302(a)(1) states the following:

> (a)  Acts which are the basis of jurisdiction. As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any non-domiciliary, or his executor or administrator, who in person or through an agent:

> 1. transacts any business within the state or contracts anywhere to supply goods or services in the state.

N.Y. CPLR § 302(a)(1).  New York courts evaluating specific jurisdiction under N.Y. CPLR 302(a)(1) must decide (1) whether the defendant "transacts any business" in New York and, if so, (2) whether the cause of action "aris[es] from" such a business transaction. *See Best Van Lines, Inc.,* 490 F.3d at 246.

13

Plaintiff's Complaint includes three counts directed to alleged contractual breaches: Count 1 (default under the Note by Pusser's Florida), Count 2 (breach of the Security Agreements by Pusser's Florida), and Count 4 (breach of contract by Defendants).  However, none of these alleged agreements involve Defendants' supply of goods or services in New York. Indeed, even the Complaint's jurisdictional allegations do not allege that Defendants contracted to supply goods or services in New York.  As a result, the only remaining basis for jurisdiction under CPLR § 302(a)(1) is that Defendants "transact[ed] any business" in New York.

        1.    <u>Defendants did not "transact business" in New York.</u>

Under N.Y. CPLR 302(a)(1), New York courts define "transact[ing] business" as activity by which a defendant purposefully avails itself of the privilege of conducting activities within New York, thereby invoking the benefits and protections of New York's laws.  *See Best Van Lines, Inc.*, 490 F.3d at 246 (citing *McKee Elec. Co. v. Rauland-Borg Corp.,* 229 N.E.2d 604, 607, 283 N.Y.S.2d 34, 37-38 (1967)).  Courts look to "the totality of the defendant's activities within the forum" to determine whether there is sufficient "purposeful activity."  *See id.* (citing *Sterling Nat'l Bank & Trust Co. v. Fidelity Mortgage Invs.,* 510 F.2d 870, 873 (2d Cir. 1975)). The totality of Defendants' activities within New York leads to one inescapable conclusion— Defendants have not purposefully conducted activities within New York such that they invoked the benefits and protections of New York law.  Rather, it was Mr. De Vos and Magwitch who aimed their conduct at the BVI, and eagerly availed themselves of the benefits and protections of BVI law.[6]

---

[6] Notably, the Note and the instrument pursuant to which Barclays assigned the Note to Magwitch contain a choice-of-law clause providing that the laws and decisions of the BVI shall govern.  *See* Tobias Decl. ¶¶ 28, 34.  The Security Agreements in which Pusser's Florida pledged certain assets to secure Pusser's Ltd's indebtedness to Magwitch also have no relationship to New York.  Like the Note and assignment thereof to Magwitch, the Security Agreements were executed in the BVI and are governed by laws other than New York's.  *Id.* ¶ 36.

Plaintiff seeks to establish that Defendants "transacted business" in New York by alleging that Mr. Tobias "maintained regular and continuous telephone, facsimile and electronic communications" with Magwitch representatives in New York.  *See* Compl. ¶ 14.  In *Kimco Exchange Place Corp. v. Thomas Benz, Inc.*, 34 A.D.3d 433 (2nd Dept. 2006), a New York real estate broker sued a Florida real estate developer for breach of an exclusive marketing agreement regarding commercial property in Florida and other states (but not New York).  The Florida defendant executed the marketing agreement and sent it to the broker in New York by facsimile and their personnel made a "few follow-up" telephone calls to the broker in New York.  The Court concluded that the acts of faxing the executed contracts to New York and making a few telephone calls did not qualify as purposeful acts constituting the transacting of business under CPLR 302(a)(1), but rather were mere attempts to contact the plaintiff.  *See Kimco Exchange Place Corp.*, 34 A.D.3d at 434.  In addition, the defendant, in contracting with the plaintiff, did not seek to take advantage of a field particular to New York because the broker marketed the properties nationally, not just within the State of New York.  *See id.*; *but see Deutsche Bank Securities, Inc. v. Montana Bd. of Investors*, 7 N.Y.3d 65, 71-72, 850 N.E.2d 1140, 1143 (N.Y. 2006) (finding that jurisdiction existed under CPLR 302(a)(1) where a nonresident institutional trader negotiated multiple substantial bond transactions by calling a known New York securities firm contact on the telephone in New York).

As in *Kimco*, any communications that Mr. Tobias had with Mr. De Vos in New York could have been held anywhere and were simply attempts to contact him, not to project Mr. Tobias or the Pusser's entities into New York in the way that the nonresident trader did in *Deutsche Bank*.  That such communications on occasion occurred while Mr. De Vos was in New York was merely happenstance.  Indeed, the communications related to Defendants' business

interests in the Caribbean and elsewhere in the southeastern United States, not to business in New York. Thus, any telephone, facsimile and electronic communications between Mr. Tobias and Mr. De Vos in New York are not sufficient to constitute "transacting business."

Plaintiff also seeks to establish specific jurisdiction by alleging that Mr. Tobias regularly employed legal counsel—Mr. De Vos—in New York both personally and on behalf of the Pusser's entities. *See* Compl. ¶ 15. Under New York law the "mere fact of being a New York lawyer engaged to perform legal services in New York is [not] enough" to satisfy CPLR § 302(a)(1). *See Pennie & Edmonds v. Austad Co.*, 681 F. Supp. 1074, 1077 (S.D.N.Y. 1988) (quoting *Perlman v. Martin,* 332 N.Y.S.2d 360, 362 (Nassau Sup. Ct. 1972)). Jurisdiction will not exist unless the client himself engages in purposeful activity within New York. *See id.*

As Mr. De Vos's Declaration makes clear, the relationship among Mr. Tobias, Mr. De Vos and the Pusser's entities began in the 1980's when Mr. De Vos invested in Pusser's Ltd and then became a member of its board. It was not until the early 1990's that Mr. De Vos began to provide legal representation to the Pusser's entities. The fact that Mr. De Vos was licensed to practice law in New York, as opposed to some other state, was immaterial to his relationship with Pusser's. *See* Tobias Decl. ¶ 18. Rather, Mr. Tobias knew Mr. De Vos as a business and tax lawyer who had a number of clients in the Caribbean and a nearby office in the U.S. Virgin Islands and who, by being a Pusser's shareholder and board member, had come to know and understand Pusser's business over the years. *Id.* ¶ 15. Defendants did not "transact business" for purposes of CPLR 302(a)(1) because they did not purposefully seek out New York counsel. Rather, they retained counsel who happened to be from New York. *Cf. Pennie & Edmonds*, 681 F. Supp. at 1078 (jurisdiction was not improper where the party purposefully chose to hire New York counsel).

16

Plaintiff also suggests that jurisdiction exists because Mr. Tobias made payments under the Note to Magwitch's bank account in New York. *See* Compl. ¶ 16. However, it is well-settled that "the mere designation of New York as the site for payment on a promissory note is insufficient to confer jurisdiction over a nonresident defendant." *First City Fed. Sav. Bank v. Dennis*, 680 F.Supp. 579, 584 (S.D.N.Y. 1988) (quoting *Plaza Realty Investors v. Bailey,* 484 F. Supp. 335, 346 (S.D.N.Y. 1979)). Unless the nonresident payor on a promissory note made payable in New York engaged in additional related activities in New York, jurisdiction in New York in an action on the promissory note is lacking. *Id.*[7] Here, the only connection between the Note and New York is payment to Magwitch's New York bank account.

2.    Even if Defendants "transacted business" in New York, Plaintiff's claims do not arise from the transacting of such business.

Even if the Court determines that Mr. Tobias "transacted business" in New York on behalf of the Pusser's entities, Magwitch cannot satisfy the second part of the 302(a)(1) inquiry because its causes of action did not arise from any business that Defendants transacted in New York. *See Best Van Lines, Inc.*, 490 F.3d at 249 (citing *Deutsche Bank,* 850 N.E.2d at 1142, 818 N.Y.S.2d at 167). Under New York law, a claim arises from a particular transaction when "there is a substantial relationship between the transaction and the claim asserted." *See id.* (citing *Sole Resort, S.A. v. Allure Resorts Management, LLC,* 450 F.3d 100, 103 (2d Cir. 2006)). A connection that is "'merely coincidental' is insufficient to support jurisdiction." *See id.* Retaining Mr. Dev Vos, meeting with him in New York, or by communicating with him electronically or over the phone in New York is not a sufficient basis for jurisdiction because none of those circumstances are substantially related to Magwitch's claims.

---

[7] In *First City*, the defendants not only agreed to make payment in New York, but they also signed additional agreements authorizing a New York agent to solicit and negotiate loans in New York, agreed to provide updated financial information to a bank in New York, and agreed to assign certain interests to a New York bank. *See First City*, 680 F. Supp. at 584.

Magwitch alleges that Mr. Tobias, on behalf of Pusser's, regularly attended business meetings in New York to discuss matters relevant to the Complaint.  *See* Compl. ¶ 12.  However, it was not until Spring 2002 that Magwitch proposed buying some of Pusser's indebtedness to Barclays.  Thus, any meetings or communications between Mr. Tobias and Mr. De Vos before that time cannot be related to Magwitch's claims.

Mr. De Vos has previously testified under oath that discussions about Magwitch acquiring the Barclays debt did not occur until March or April 2002 and took place during negotiations *in the BVI* with a Barclays Bank representative:

> Q.     . . . Perhaps the best way to approach this is to ask when did you first have discussions with anyone about possibly acquiring all or some portion of the Barclays debt?
>
> A.     If my recollection is correct is March or April of 2002.
>
>         *       *       *
>
> Q.     What precipitated those discussions?
>
> A.     It occurred during the negotiations with Mr. Nobbs, the representative of Barclays Bank.
>
>         *       *       *
>
> Q.     Did you have face-to-face meetings with him --
>
> A.     Yes.
>
> Q.     -- in the Virgin Islands?
>
> A.     In the British Virgin Islands, yes.

Gilliam Decl. Ex. E at 80 – 81, De Vos's 2005 Depo.  According to Mr. De Vos, Barclays had not yet demanded payment from Pusser's at the time of the meetings in the BVI in 2002, and it was not until then that Barclays threatened to liquidate Pusser's:

Q.    How did [the subject of Magwitch acquiring some of the debt] come about?  Somebody must have had this idea.  It's your money.  So you must have been in on the idea at some point.

A.    There came a point in the discussions with Barclays where Barclays made it clear – Barclays, in the person of Mr. Nobbs, made it clear that they would step in and liquidate Pusser's if an agreement was not reached to their satisfaction. . . .

Q.    At the time, was Barclays facility in default?

A.    No, I don't believe so.

Q.    Had Barclays made a formal demand for payment?

A.    No.

*Id.* at 81 – 82.

Mr. Tobias has no recollection of discussing the Barclays workout or the Magwitch debt purchase with Mr. De Vos on the phone while Mr. De Vos was in New York, but if he did it was only because Mr. De Vos happened to be in New York at that time.  *See* Tobias Decl. ¶ 17.  Nor does Mr. Tobias have any recollection of discussing the Barclays workout or Magwitch's purchase of a piece of the Barclays debt during the handful of times he was physically present in New York from 2000 - 2004.  *Id.*  To the contrary, Mr. Tobias recalls, consistent with Mr. De Vos's testimony, above, that all significant discussions about the Barclays workout, and Magwitch's part in it, took place in the BVI or, on at least one occasion, in Barbados.  *Id.*

Meetings in New York that were not for the purpose of executing or performing the contract at issue, even if there were multiple meetings, are insufficient to confer jurisdiction.  *See Worldwide Futgol Assocs., Inc. v. Event Entertainment, Inc.*, 983 F. Supp. 173, 179 (E.D.N.Y. 1997).  Thus, telephone calls to or meetings with Mr. De Vos in New York that predated the discussions underlying Magwitch's claims are irrelevant to specific jurisdiction.  By Mr. De Vos's own admission, the discussions about Magwitch's purchase of a piece of the Barclays debt

took place during face-to-face meetings in the BVI, not in New York. The Note was executed in the BVI and is expressly governed by BVI law. In addition, Mr. De Vos handled matters pertaining to Magwitch's investment in Pusser's from his home in New Jersey, separate from matters relating to his law practice. *See* Gilliam Decl. Ex. B ¶ 61(k), De Vos's N.J. Decl.

Mr. De Vos's legal services to Defendants do not bear any relationship to Magwitch's purchase of the Note from Barclays, or to Magwitch's causes of action arising from the purchase, much less the "substantial relationship" required to satisfy the second part of the jurisdictional test under CPLR 302(a)(1). In fee dispute cases where the New York attorney is seeking to recover fees for services rendered, the cause of action is substantially related to a party's hiring of New York counsel. *See Levisohn, Lerner, Berger & Langsam v. Med. Taping Sys., Inc.,* 10 F. Supp. 2d 334, 339 (S.D.N.Y. 1998) (finding that a defendant transacts business in New York when he visits a law firm's New York office to negotiate a retainer agreement, prepares for a court hearing while in New York, makes telephone calls to New York, and sends correspondence to New York); *see also Pennie & Edmonds*, 681 F. Supp. at 1078 (jurisdiction existed in a fee dispute where the client purposefully selected New York counsel and attended a meeting in New York with co-parties where they reached an agreement on the amount and allocation of the law firm's fees). Here, by contrast, Magwitch's claims do not arise out of Mr. De Vos's legal services for the Defendants; rather, they arise out of Magwitch's participation in an agreement with Barclays Bank to purchase a Note and out of alleged fraudulent transfers of assets among the Pusser's entities, all events which would have occurred in the BVI.

Thus, Plaintiff cannot satisfy the second part of the jurisdictional test under CPLR 302(a)(1) because there is no substantial relationship between the circumstances that Plaintiff alleges suffice as Defendants "transacting business" in New York and Plaintiff's claims.

**B.**   **Jurisdiction does not exist on Plaintiff's tort claims pursuant to N.Y. CPLR § 302(a)(3).**

In Count 3, Plaintiff alleges that Tobias, Pusser's Ltd and PWI intentionally and tortiously interfered with the Security Agreements through the transfer of assets from Pusser's Florida. *See* Compl. ¶¶ 70 – 73.  In Counts 5 and 6, Plaintiff claims that Mr. Tobias falsely warranted on behalf of the Pusser's entities that assets from Pusser's Florida would not be transferred to any other entity and that all Defendants participated fraudulently in such transfers. *Id.* ¶¶ 79 – 89.  In Count 7, Plaintiff complains that Mr. Tobias, Pusser's Florida and PWI converted funds received by Pusser's Florida in settlement of insurance claims from damages to premises in Maryland in violation of the terms of a security agreement between Pusser's Florida and Magwitch.  *Id.* ¶¶ 86 - 87.  Finally, in Count 8, Plaintiff alleges that Mr. Tobias breached a fiduciary duty to the creditors of the Pusser's entities by effecting the asset transfers.

CPLR § 302(a)(3) states the following:

> (a)  Acts which are the basis of jurisdiction. As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any non-domiciliary, or his executor or administrator, who in person or through an agent:

> 3.  commits a tortious act without the state causing injury to person or property within the state . . . if he

> (i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in New York or

> (2) expects or should reasonably expect the act to have consequences in the state *and* derives substantial revenue from interstate and international commerce.

Thus, for this section to apply, each of the following must be shown: "(1) a tortious act committed outside New York; (2) resultant injury within New York; and (3) the defendant either (i) does or solicits business or engages in any other course of  conduct, or derives substantial

revenue from activities, in New York, or (ii) expects or should expect that its tortious act will have consequences in New York, *and* derives substantial revenue from interstate or international commerce." *Baptichon v. Nevada State Bank*, 304 F. Supp. 2d 451, 459-60 (E.D.N.Y. 2004).

Putting aside the fact that there were no improper transfers of funds or other tortious acts committed, Plaintiff cannot establish specific jurisdiction over the Defendants with respect to its tort claims because the alleged injury did not occur in New York. The determination of where the injury occurred is governed by the "situs-of-injury test," which requires the Court to identify the "original event which caused the injury." *See Baptichon*, 304 F. Supp. 2d at 460 (citing *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez,* 171 F.3d 779, 791 (2d Cir. 1999)). The site of the injury is where the underlying, original event causing the injury took place, and is different than both the initial tort and its final economic consequences. *See id*.

Plaintiff's injury did not take place in New York. The alleged representations and promises that Defendants purportedly made about the transfer of assets between Pusser's companies are unrelated to New York. The accounts of all the Pusser's operations in the Caribbean and the United States were managed in the BVI by a single financial comptroller, Kert Tennikait. *See* Tobias Decl. ¶ 37. Representatives of the Pusser's entities and Magwitch, with Mr. De Vos in attendance wearing his lawyer, officer, director and creditor hats, met often in the BVI and movement of cash between companies was a topic of discussion. *Id*. Any alleged representations with respect to transfers of funds were made in the BVI. *Id.* To the extent that any of the representations were made outside the BVI they were made, by Magwitch's own admission, to Mr. De Vos in New Jersey. *See* Gilliam Decl. Ex. C at 27, Magwitch's New Jersey Opposition. Furthermore, any inter-company fund transfers that occurred, whether from

Caribbean operations to United States operations or vice versa, were effected and booked in the BVI. *See* Tobias Decl. ¶ 36.[8]

Thus, the site of the injury for purposes of CPLR 302(a)(3) is not New York because the only connection between the tort claims and New York is an alleged economic consequence to Magwitch. "The occurrence of financial consequences in New York due to the fortuitous location of plaintiff['s bank] in New York is not a sufficient basis for jurisdiction under § 302(a)(3) where the underlying events took place outside New York." *See Baptichon*, 304 F. Supp. 2d at 460 (citing *Whitaker v. Am. Telecasting, Inc.,* 261 F.3d 196, 209 (2d Cir. 2001)); *see also Mije Assocs. v. Halliburton Servs.,* 552 F. Supp. 418, 420 (S.D.N.Y. 1982) (collecting cases where courts "declined to assert personal jurisdiction under CPLR 302(a)(3) over defendants alleged to have engaged in out-of-state tortious conduct causing injury 'in' New York solely because plaintiff (or plaintiff's bank account) was located in the state."). Mr. De Vos has even acknowledged that Magwitch felt all of the alleged harm in New Jersey, not New York: "Magwitch felt not only the brunt of the harm, but all of the harm, in New Jersey." *See* Gilliam Decl. Ex. C at 27, Magwitch's New Jersey Opposition.

As a result, Plaintiff cannot establish the elements necessary pursuant to CPLR 302(a)(3) for the Court to find jurisdiction over Defendants on the tort claims.

## IV.    Subjecting Defendants To Jurisdiction In New York Would Be Unreasonable And Offend Traditional Notions Of Fair Play

Defendants have shown that New York does not have jurisdiction over any of the Defendants under sections 301 or 302 of New York's long-arm statute. However, even if the Court were to decide that jurisdiction exists under the statute, jurisdiction would not be

---

[8] Similarly, with respect to Plaintiff's conversion claim (Count 7), the alleged conversion of insurance funds for damages to Pusser's premises in Annapolis, Maryland in violation of the Security Agreements has no bearing on New York. Any conversion of funds would have been effected in the BVI.

compatible with requirements of due process established under the Fourteenth Amendment.  The reasonableness of jurisdiction depends on an evaluation of the adequacy of a defendant's contacts with New York and the reasonableness and fairness of the court's exercise of jurisdiction over the defendants.  *See Int'l Healthcare*, 470 F. Supp. 2d at 359.  Courts analyze several factors to assess fairness, including the burden on a defendant to defend the case in New York, the interest of New York in adjudicating the matter, and the plaintiff's interest in obtaining convenient relief.  *See id.* at 360.  Here, these factors weigh heavily against a finding that the assertion of jurisdiction over Defendants is reasonable.

Defendants welcome the opportunity to disprove Magwitch's claims, but defending the action in New York would be a substantial hardship for Defendants.  Neither Pusser's Ltd nor Pusser's Florida is actually doing business, which leaves PWI, and that entity is organized under the laws of the BVI and has its operations in the Caribbean.  Other than Mr. De Vos, the people familiar with the events out of which Magwitch's claims arise are in the BVI, including Mr. Tobias, Kert Tennikait, Barclays Bank personnel, Barclays' and Pusser's accounting firms, Barclays' attorneys (a BVI firm), Paul Webster (a lawyer in the BVI who is familiar with the Barclays workout and was a lawyer for Pusser's), and others.  *See* Tobias Decl. ¶ 46.  All of the Pusser's accounting materials and other corporate documents are held in the BVI.  *Id.* ¶ 37.

Mr. De Vos, on the other hand, invested in Pusser's Ltd on his own volition and then became further involved in the BVI as a director of Pusser's Ltd, and its legal advisor.  Pursuant to these roles, he traveled to the BVI no fewer than 7 times during the relevant time period.  *See* Gilliam Decl. Ex. B ¶ 77, De Vos's N.J. Decl.  Mr. De Vos also acknowledges that he has traveled to the BVI over the past 30 years to perform legal services for other clients organized under the laws of the BVI.  *See* Gilliam Decl. Ex. D ¶ 6, De Vos's Suppl. N.J. Decl.  In addition,

Magwitch bought the debt of Pusser's Ltd from a bank in the BVI. Thus, the burden on the Defendants to defend in New York is far greater than it would be on Magwitch to seek relief in the BVI.

In the same regard, New York has no interest in the underlying dispute. Magwitch's principal, Mr. De Vos, lives in New Jersey, keeps copies of the agreements there, made demand of payment on letterhead with a New Jersey address, and has acknowledged that he manages Magwitch from New Jersey separate and apart from any professional legal representation associated with his law firm in New York and that all of the harm that allegedly befell Magwitch was felt in New Jersey. The only relevance to New York is that Plaintiff Magwitch is incorporated there. Otherwise, New York has no connection to the negotiation or the performance of any of the agreements. The choice of law provisions in the operative agreements reference the BVI or a State other than New York.

## CONCLUSION

None of the Defendants does business in New York. The claims in this case arise out of the deliberate decision of Mr. De Vos and Magwitch to make investments in Pusser's in the BVI, not out of any dealings or business in New York. The Court should dismiss this case for lack of personal jurisdiction.

Dated: New York, New York
      March 10, 2008

                                    Gregory W. Gilliam (GG 2857)
                                    VENABLE LLP
                                    Rockefeller Center
                                    1270 Avenue of the Americas, 25th Floor
                                    New York, New York 10020
                                    Tel: (212) 307-5500
                                    *Attorneys for Defendants Pusser's Inc.,*
                                    *Pusser's Ltd., Pusser's West Indies Ltd., and*
                                    *Charles S. Tobias*

TO:    Clerk of Court
United States District Court
Southern District of New York
Daniel Patrick Moynihan
United States Courthouse
500 Pearl Street
New York, New York  10007-1312

Andrew W. Heymann, Esq.
SOLOMON PEARL BLUM HEYMANN & STITCH LLP
40 Wall Street, 35th Floor
New York, New York  10004
*Attorneys for Plaintiff Magwitch L.L.C.*

BA2/337483